UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | No. 3:20-CR-00575-X |
| | § | |
| JONATHAN DEAN DAVIS | § | |

## MEMORANDUM OPINION AND
## <u>PRELIMINARY ORDER OF FORFEITURE</u>

The United States filed a Motion for Preliminary Order of Forfeiture [Doc. No. 167]. For the reasons below, the Court **GRANTS** the motion.

## I. Legal Standards

Federal Rule of Criminal Procedure 32.2 authorizes the Court to make forfeiture determinations "[a]s soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought."[1] In this phase of the case, "the court must determine what property is subject to forfeiture under the applicable statute."[2] Forfeiture is mandatory when the defendant is convicted of an offense that implicates forfeiture.[3] "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory

---

[1] FED. R. CRIM. P. 32.2(b)(1)(A).

[2] *Id.*

[3] *See* 21 U.S.C § 853(a) ("Any person convicted of a violation . . . shall forfeit to the United States").

1

criteria."[4]  The burden of proof for determining forfeiture is by a preponderance of the evidence.[5]

"If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure."[6]  Further, "[i]f the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case."[7] Section 981(a)(1)(C) of Title 18 authorizes forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" the wire fraud statute.[8]  And section 982(a)(1) of Title 18 authorizes forfeiture of "any property, real or personal, involved in [money laundering], or any property traceable to such property."[9]

## II. Analysis

### A. Evidentiary Objections

Davis filed an objection to the Government's evidence supporting the motion. [Doc. No. 181].  Davis objected to several aspects of Tracy Clark Ross's declaration

---

[4] FED. R. CRIM. P. at 32.2(b)(2)(A).

[5] *United States v. Gasanova*, 332 F.3d 297, 301 (5th Cir. 2003).

[6] 28 U.S.C. § 2461(c).

[7] *Id.*

[8] *See* 18 U.S.C § 981(a)(1)(C).  Section 981(a)(1)(C) applies to a host of offenses, including any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).  *Id.*  Wire fraud is included under the umbrella of "specified unlawful activity."  *See id.* §§ 1956(c)(7)(A) (covering "any act or activity constituting an offense listed in section 1961(1) of this title . . . ."); *id.* § 1961(1) (covering "section 1343 (relating to wire fraud)").

[9] *See* 18 U.S.C. § 982(a)(1) (applying to person convicted of an offense in violation of 18 U.S.C. § 1957, the money laundering statute.).

testimony and certain trial exhibits it relies on. After reviewing the arguments and authorities as well as holding a hearing on this motion, the Court **OVERRULES** Davis's objections.

## B. Proceeds

Proceeds are property the defendant would not have obtained or retained but for his commission of a criminal offense.[10] The Government must demonstrate a nexus between the offense and the property, but it is not required to explain how each individual dollar was fraudulently obtained.[11] Further, forfeitable proceeds include proceeds from a continuing fraudulent scheme.[12]

The Government contends that the proceeds of the seven counts of wire fraud in this case are each VA payment made to Retail Ready Career Center for veteran student tuition, a total of $72,480,225.03. Davis disputes this conclusion and argues that the total amount of VA payments is the wrong calculus of wire fraud proceeds. Because the seven "use of interstate wires" charges identified in the superseding indictment were individual money transfers from the VA to Retail Ready, Davis argues that the proceeds of each count of wire fraud is limited to the amount of the money transfer identified with that offense.

But this is incorrect. Although the *actus reus* of wire fraud is the use of interstate wires, by definition, wire fraud is the use of interstate wire

---

[10] *United States v. Sanders*, 952 F.3d 263, 286 (5th Cir. 2020).

[11] *See id.*

[12] *United States v. Reed*, 908 F.3d 102, 125–26 (5th Cir. 2018).

3

communications for the purpose of executing a scheme or artifice to defraud.[13] Because the object of wire fraud is to further a fraudulent scheme, the proceeds of wire fraud necessarily include the proceeds of the scheme itself.

Here, the superseding indictment identified "a scheme to defraud the VA and Retail Ready students, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises," resulting in the VA paying "over $71 million in GI Bill benefits to Retail Ready."[14]  After a two-week trial, the jury found Davis guilty of all seven wire fraud counts.[15]  As Davis was keen to argue at trial, the jury could only find Davis guilty of conduct alleged in the superseding indictment; lest they work an unconstitutional constructive amendment of the indictment.  Because the scheme involving "over $71 million in GI Benefits" was the only scheme alleged in the superseding indictment, by finding Davis guilty of wire fraud, the jury also necessarily concluded that Davis devised this scheme as well.[16] And, based on the evidence and information in the record, the Court independently determines that the sum-total VA payments are the proceeds of Davis's scheme to defraud.  Therefore, as a general matter, the proceeds of wire fraud may include all payments made by the VA to Retail Ready as a result of the scheme.

---

[13] 18 U.S.C. § 1343.

[14] Doc. No. 107 at 2–4.

[15] Doc. No. 164 at 1.

[16] *See* 18 U.S.C. § 1343.

**C. Specific Property**

The Government requests forfeiture of several items of specific property it argues are proceeds or traceable to proceeds of the seven wire fraud offenses. These assets include:

a) $4,480,466.16 in funds seized from Bank of America account ending in 2653 on or about September 20, 2017, maintained in the name of Retail Ready Career Center;

b) $146,370.00 in funds seized from Bank of America account ending in 0252 on or about September 20, 2017, maintained in the name of Retail Ready Career Center;

c) $77,428.69 in funds seized from Charles Schwab account ending in 8588 on or about September 20, 2017, maintained in the name of Jonathan Davis;

d) $9,643.28 in funds seized from Bank of Utah account ending in 2251 on or about September 20, 2017, maintained in the name of Trades United;

e) One 2014 Lamborghini Aventador (VIN: ZHWUR1ZD0ELA02916), seized on October 6, 2017;

f) Up to $378,846.51 in equity from One 2016 Ferrari 488 (VIN: ZFF80AMA0G0219421), seized on October 6, 2017;

g) One 2017 Bentley Continental GT V8 (VIN: SCBFH7ZA0HC063118), seized on October 11, 2017;

h) Up to $154,046.28 in equity from One 2017 Mercedes-Benz AMG S63 (VIN: WDDUG7JB4HA325753, seized on October 11, 2017;

i) One 2016 Mercedes-Benz G63 (VIN: WDCYC7DF4GX258941), seized on October 11, 2017;

j) One 2016 Dodge Ram 2500 (VIN: 3C6UR5DL1GG314858), seized on October 11, 2017;

k) One 2016 BMW Alpina (VIN: WBA6D6C54GGK18160), seized on October 23, 2017;

5

l) Up to $2,266,833.25 in equity plus appreciation from Real property located at 14888 Lake Forest Drive, Dallas, Texas, also known as lot 1, block A, of a replat of Lake Forest Addition, an addition to the city of Addison, Dallas County, Texas, according to the replat thereof recorded in volume 94205, page 1934, map records, Dallas County, Texas, as corrected by certificate of corrections recorded in volume 94226, page 300, deed records, Dallas County, Texas;

m) Up to $88,229.62 in equity plus appreciation in Real property located at 195 North 200 West, Logan, Utah, also known as beginning at the Northeast corner of Lot 8, Block 21, Plat "A" Logan City Survey, and running thence West 87.5 feet; thence North 5 rods to the place of beginning and further described as being situated in the Southeast Quarter of Section 33, Township 12 North, Range 1 East of the Salt Lake Base and Meridian; and

n) Up to $84,929.75 in equity plus appreciation in Real property located at 1408 West 2125 South, Wellsville, Utah, also known as Lot 108, Spring Creek Village, Phase 1, as shown by the Official Plat thereof, filed September 7, 2007, as Filing No. 954131 in the Office of the Recorder of Cache County, Utah. As said Plat Map may have heretofore been amended or supplemented and in the Declaration of Covenants, Conditions and Restrictions of Spring Creek Village, recorded in Cache County, Utah as Entry No. 1005619 in Book 1588 at Page 1751 of the Official Records of the County Recorder of Cache County, Utah.[17]

The Government also requests forfeiture of specific property involved in the four money laundering offenses.  This includes:

a) One 2014 Lamborghini Aventador (VIN: ZHWUR1ZD0ELA02916), seized on October 6, 2017;

b) One 2016 Ferrari 488 Spider (VIN: ZFF80AMA0G0219421), seized on October 6, 2017;

c) One 2017 Bentley Continental GT V8 (VIN: SCBFH7ZA0HC063118), seized on October 11, 2017;

d) Real property located at 14888 Lake Forest Drive, Dallas, Texas, also known as lot 1, block A, of a replat of Lake Forest Addition, an

---

[17] Doc. No. 167 at 16–18.

6

> addition to the city of Addison, Dallas County, Texas, according to the replat thereof recorded in volume 94205, page 1934, map records, Dallas County, Texas, as corrected by certificate of corrections recorded in volume 94226, page 300, deed records, Dallas County, Texas.[18]

Davis concedes that the statutory forfeiture requirements are met for the specific property connected to the money laundering offenses.  However, he disputes the Government's basis for forfeiting the specific property identified with the wire fraud offenses.

Davis first argues that the Government used the wrong statutory definition of proceeds as applied to the facts of this case.   The statute authorizing forfeiture of wire fraud proceeds, 18 U.S.C. § 981, provides multiple definitions of proceeds:

> (A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

> (B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services.  The claimant shall have the burden of proof with respect to the issue of direct costs.  The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.[19]

---

[18] *Id.* at 15.

[19] 18 U.S.C. § 981(a)(2)(A)–(B).

Davis argues that running Retail Ready Career Center, a for-profit trade school, was a lawful service provided in an illegal manner and therefore the subparagraph B limitations should apply here (and the Court should factor out direct costs).

But, as the Government points out, the fraudulent conduct alleged in the superseding indictment centered on fraudulent misrepresentations made to government entities for the purpose of receiving GI Bill benefits, not the operation of the trade school itself.  For section 981(a)(2)(B) to apply, the crime must involve lawful goods or services that were sold or provided in an illegal manner.[20]  Therefore, "the crime must involve a good or service that could, hypothetically, be provided in a lawful manner."[21]  But the fraudulent scheme charged by the Government was not for the illegal provision of trade school services but rather for the unlawful receipt of government funds.[22]  Davis could not have lied to government entities or fraudulently received GI Benefits in a hypothetically lawful manner, therefore his wire fraud offenses were inherently unlawful and subject to section 981(a)(2)(A).  Because section 981(a)(2)(A) applies, the proper measure of proceeds for wire fraud is the gross amount of funds received from the offense.

Davis also makes several arguments that all essentially contend the proceeds of wire fraud are not traceable to the specific property.[23]  But Davis bases these

---

[20] *See United States v. George*, 886 F.3d 31, 40 (1st Cir. 2018).

[21] *Id.*

[22] *See* Doc. No. 107 at 2–4; *George*, 886 F.3d at 40 ("[The defendant's] crime was not the provision of bus services in an illegal manner but, rather, the misappropriation of government resources to his own behoof.").

[23] Specifically, Davis argues that the proceeds never left Retail Ready's possession, were not used to purchase the non-monetary specific property, were never received by Davis, and that the

arguments on his continuing arguments that (1) the "proceeds" of wire fraud are only the funds included in the seven wires identified in relation to the wire fraud offenses and (2) that subsequent reapprovals of Retail Ready to receive VA funds break the chain of relation between funds received after the reapproval and the misrepresentations he made in order to receive the initial approval.

As the Court already explained, the proceeds of the wire fraud offenses are the entirety of the VA payments to Retail Ready—$72,480,225.03.  The jury convicted Davis of a "a scheme to defraud the VA and Retail Ready students, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises," resulting in the VA paying "over $71 million in GI Bill benefits to Retail Ready," thereby factually rejecting his argument that subsequent reapprovals ended the scheme.[24]  And the Court likewise finds that the proceeds of his wire fraud are the $72,480,225.03.  The Government's evidence sufficiently traces the VA payments to the Retail Ready bank accounts and, using appropriate tracing methods, traces the VA funds from those accounts to purchases of the non-monetary assets.[25]  And the record demonstrates that Davis possessed sufficient control over the Retail Ready bank accounts such that the funds within

___

government failed to establish a nexus between the offense and the property.  *See* Doc. No. 180 at 12–15.

[24] Doc. No. 107 at 2–4.

[25] Doc. No. 168-1 at 3–4, 7–17.

9

were "property of the defendant."[26]  Therefore, the Government satisfied its burden to establish the forfeitability of the specific property.

### D. Money Judgment

The Government requests the Court to enter a $72,480,225.03 forfeiture money judgment against Davis, which is subject to offsets equal to the value of any forfeited specific or substitute property.  Davis disputes the calculation of this amount and the propriety of the Court applying the judgment onto him personally.

Davis disputes the $72,480,224.05 figure itself for the same reasons he argued that figure overstated the "proceeds" of his wire fraud offenses.  Those arguments fail here for the same reasons.

Davis also argues that the Court cannot hold him criminally liable for this amount because he never personally received the GI Bill benefit funds from the VA.[27]  But this ignores the facts of the case.  Here, the GI Benefits are directly traceable to the criminal conduct for which the jury convicted Davis.[28]  And, although the funds were received into Retail Ready's accounts rather than Davis's personal accounts,

---

[26] *See* Doc. 201 at 90:4–11 ("[Retail Ready] was a pass-through entity for tax purposes, and thus did not pay income taxes on its own benefit.  Money was paid from [Retail Ready]'s accounts directly to the Internal Revenue Service to cover Mr. Davis' income tax obligations; however, those payments were booked as owner distributions, which appear on the balance sheet and not on the profit and loss statement."); Doc. No. 168–1 at 7 ("In December of 2013, Davis opened BA0252 in the name of Retail Ready Career Center, Inc. Jonathan Davis was the sole signor on this account. . . . In January of 2014, Davis opened BA2653 in the name of Retail Ready Career Center, Inc. Jonathan Davis was the sole signor on this account.").

[27] Davis bases his argument on *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), where the Supreme Court of the United States clarified that the forfeiture provisions in 21 U.S.C. § 853 do not impose joint and several liability on each member of a conspiracy.  But this case does not involve section 853 or a conspiracy, and so *Honeycutt* does not apply.

[28] *See* Doc. No. 168–1 at 3–4, 7–17.

10

Davis had full control over Retail Ready and used its accounts for personal spending.[29]  These GI Bill funds paid to Retail Ready, and controlled by Davis, as a result of his fraudulent acts are subject to forfeiture by money judgment under the relevant statutes.

## E. Substitute Property

Federal Rule of Criminal Procedure Rule 32.2(e)(1)(B) authorizes the Court, on the Government's motion, to enter an order of forfeiture that includes substitute assets if the applicable statute's requirements are met.[30]  The applicable statute here is 21 U.S.C. § 853(p):

> (1) In general. Paragraph (2) of this subsection shall apply, if any property described in [21 U.S.C. § 853(a)], as a result of any act or omission of the defendant—
>
> (A) cannot be located upon the exercise of due diligence;
>
> (B) has been transferred or sold to, or deposited with, a third party;
>
> (C) has been placed beyond the jurisdiction of the court;
>
> (D) has been substantially diminished in value; or
>
> (E) has been commingled with other property which cannot be divided without difficulty.
>
> (2) Substitute property. In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture

---

[29] *See id.*; *see also United States v. Peters*, 732 F.3d 93, 102 (2d Cir. 2013) (because the statute makes the defendant liable for property obtained "directly or indirectly," he is liable for proceeds obtained by a corporation that he dominates or controls, even if he did not obtain the money himself); *SEC v. Amerindo Inv. Advisors, Inc.*, No. 1:05-CV-05231, 2019 WL 3526590, at *3 (S.D.N.Y. Aug. 2, 2019) (consistent with *Honeycutt*, defendants are liable for forfeiture money judgment including the value of corporate assets they deposited into business they owned or controlled); *United States v. Emor*, 850 F. Supp. 2d 176, 217 (D.D.C. 2012) (funds become proceeds when they come under the defendant's control, even if he has not yet received the benefit).

[30] FED. R. CRIM. P. 32.2(e)(1)(B).

of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.[31]

This statute allows the Government to forfeit substitute assets valued up to the total value of property subject to forfeiture under section 853(a) that is unavailable due to one or more of the section 853(p)(1) factors.

The Government claims that Davis withdrew significant amounts of cash during the time of the offenses and dissipated funds to support a luxury lifestyle. As a result, the Government was unable, upon the exercise of due diligence, to locate additional directly forfeitable proceeds of Davis' offenses sufficient to satisfy the total forfeiture amount.[32]  Therefore, the Government requests forfeiture of substitute assets, in the form of "other funds," that are not traceable to the wire fraud offenses. These assets are:

a) $8.90 in funds seized from Charles Schwab account ending in 8588 on or about September 20, 2017, maintained in the name of Jonathan Davis;

b) $25.00 in funds seized from Bank of Utah account ending in 2251 on or about September 20, 2017, maintained in the name of Trades United;

c) Up to $3,290.00 in equity from One 2016 Ferrari 488 (VIN: ZFF80AMA0G0219421), seized on October 6, 2017;

d) Up to $58,000.00 in equity from One 2017 Mercedes-Benz AMG S63 (VIN: WDDUG7JB4HA325753), seized on October 11, 2017;

e) Up to $0.47 in equity from One 2016 BMW Alpina (VIN: WBA6D6C54GGK18160), seized on October 23, 2017;

---

[31] 21 U.S.C. § 853(p)(1)–(2).

[32] Doc. No. 168-1 at 18–20.

    f)  Up to $20,396.20 in equity plus appreciation from Real property located at 14888 Lake Forest Drive, Dallas, Texas, also known as lot 1, block A, of a replat of Lake Forest Addition, an addition to the city of Addison, Dallas County, Texas, according to the replat thereof recorded in volume 94205, page 1934, map records, Dallas County, Texas, as corrected by certificate of corrections recorded in volume 94226, page 300, deed records, Dallas County, Texas.[33]

Davis challenges inclusion of these substitute assets into the forfeiture order. Davis first argues that the prerequisites of section 853(a) are not met, simply reiterating his objections to the Government's $72,480,225.03 figure.    These arguments fail for the same reasons the Court has already explained.    Davis also argues that the money in the Trades United, Inc. bank account and the three real properties are owned by other individuals and therefore not forfeitable.[34]

The Government, however, points out that section 853(p)(2) does not require the substitute property to be owned by the defendant, it merely requires it to be

---

[33] This one is confusing.  The Government originally sought substitute forfeiture on eight items, including two real properties in Utah.  Doc. No. 167 at 20–21.  At the hearing, the Government dropped its request to related to the two Utah properties.  Doc. 201 at 71:6–11 ("As far as the two Utah real properties, we are just going to seek direct forfeiture of them . . . .").  .  Following the hearing, the Government filed a notice confirming it was dropping the two Utah properties regarding substitute forfeiture (but keeping them as to specific forfeiture).  Doc. 197 at 1 ("In the hearing, the Government notified the Court that it would no longer seek substitute assets related to: (1) the real property located at 195 North 200 West Logan, Utah; and (2) the real property located at 1408 West 2125 South, Wellsville, Utah.  The Government will continue to pursue forfeiture of these properties as specific assets that are directly forfeitable, as set forth in the original motion.").  But the Government's proposed order does the opposite, adding in the two Utah properties and others for a total of fourteen items for substitute forfeiture (rather than six items).  Doc. 197-1 at 5–6.  The Court assumes these additions in the proposed order were mistakes because they conflict with the hearing, the amended notice, and the prior proposed order.  Accordingly, the Court orders the substitute forfeiture of the six items discussed at the hearing and addressed in the revised notice rather than the revised proposed order.

[34] *See* 21 U.S.C. § 853(p)(2) ("In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property *of the defendant*, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable." (emphasis added)).

"property of the defendant."[35]  And the Federal Rules of Criminal Procedure employ third-party ancillary proceedings under Rule 32.2 that handle third party ownership claims.[36]  Defendants, on the other hand, lack standing to object to forfeiture on the basis that a third party owns the property.[37]  Finally, the Government's evidence demonstrates that these assets are Davis's property.[38]  Therefore, the Government established the forfeitability of these substitute assets.

## F. Eighth Amendment

Finally, Davis argues that a $72,480,225.03 violates the Eighth Amendment. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[39]  Forfeitures are "'fines' if they constitute punishment for an offense."[40]  Davis argues that the forfeiture the Government requests in this case is grossly disproportionate to the convicted offenses and is therefore an unconstitutional excessive fine.

---

[35] *Id.*

[36] FED. R. CRIM. P. 32.2.

[37] *See United States v. Weitzman*, 963 F. Supp. 2d 218, 221 (S.D.N.Y. 2013).

[38] Davis allegedly transferred title to his residence in Dallas to a nominee company, that he created, after the Government initially seized his assets.  *See* Doc. 201 at 73:15–17 ("[T]hen the title to his Dallas residence here was transferred to a company that he created in the middle of all of these assets being seized."); Doc. 185 at 10–11 ("Regarding Davis' residence in Dallas, it appears he created a nominee company to transfer title of . . . .").  He did the same with the Bentley Continental GT, transferring it to his girlfriend after the Government seized it.  *See* Doc. 201 at 73:12–14 ("[T]he day after the Bentley was seized, the title was transferred by Mr. Davis to his girlfriend.")  But what the Court finds most compelling here is Davis's role in using dirty funds to acquire the properties (rather than his attempts to offload them once the Government started seizing his assets).  This is true because the legal standard is property of the defendant, not property titled in the defendant's name.  The trial and forfeiture records are replete with evidence showing Davis using Retail Ready accounts to purchase the assets in question.

[39] U.S. CONST. amend. VIII.

[40] *United States v. Bajakajian*, 524 U.S. 321, 328 (1998).

14

Both before and after the Supreme Court's decision in *Bajakajin*, however, the Fifth Circuit has consistently held that the forfeitures of fraudulent proceeds do not violate the Eighth Amendment excessive fines clause.[41]   Further, the forfeiture requested here is not grossly disproportionate.   The jury convicted Davis of seven counts of wire fraud furthering a $72 million scheme to defraud.   And the government's evidence establishes the proceeds of the wire fraud amounted to $72,480,225.03 in Gill Bill funds.   Therefore, forfeiture in the same amount is not grossly disproportionate to the offenses themselves.   Because the requested forfeiture is sufficiently proportionate, it does not violate the Eighth Amendment excessive fines clause.

### III. Order of Forfeiture

After consideration, the Court determines the motion for preliminary order of forfeiture should be and is hereby **GRANTED**.

The Government notified the defendant that it would seek to forfeit ("the property") upon the defendant's conviction on Count One through Count Seven (in violation of 18 U.S.C. § 1343, wire fraud) and Count Ten through Count Thirteen (18 U.S.C. § 1957, money laundering) of the Superseding Indictment.   Such properties included:

(a)   $4,480,466.16 in funds seized from Bank of America account ending in 2653 on or about September 20, 2017, maintained in the name of Retail Ready Career Center;

---

[41] *See United States v. Betancourt*, 422 F.3d 240, 250–51 (5th Cir. 2005); *United States v. Tilley*, 18 F.3d 295, 300 (5th Cir. 1994).

(b)    $146,370.00 in funds seized from Bank of America account ending in 0252 on or about September 20, 2017, maintained in the name of Retail Ready Career Center;

(c)    $77,437.59 in funds seized from Charles Schwab account ending in 8588 on or about September 20, 2017, maintained in the name of Jonathan Davis;

(d)    $9,668.28 in funds seized from Bank of Utah account ending in 2251 on or about September 20, 2017, maintained in the name of Trades United;

(e)    One 2014 Lamborghini Aventador (VIN: ZHWUR1ZD0ELA02916), seized on October 6, 2017;

(f)    One 2016 Ferrari 488 (VIN: ZFF80AMA0G0219421), seized on October 6, 2017;

(g)    One 2017 Bentley Continental GT V8 (VIN: SCBFH7ZA0HC063118), seized on October 11, 2017;

(h)    One 2017 Mercedes-Benz AMG S63 (VIN: WDDUG7JB4HA325753), seized on October 11, 2017;

(i)    One 2016 Mercedes-Benz G63 (VIN: WDCYC7DF4GX258941), seized on October 11, 2017;

(j)    One 2016 Dodge Ram 2500 (VIN: 3C6UR5DL1GG314858), seized on October 11, 2017;

(k)    One 2016 BMW Alpina (VIN: WBA6D6C54GGK18160), seized on October 23, 2017;

(l)    Real property located at 14888 Lake Forest Drive, Dallas, Texas, also known as lot 1, block A, of a replat of Lake Forest Addition, an addition to the city of Addison, Dallas County, Texas, according to the replat thereof recorded in volume 94205, page 1934, map records, Dallas County, Texas, as corrected by certificate of corrections recorded in volume 94226, page 300, deed records, Dallas County, Texas;

(m)    Real property located at 195 North 200 West, Logan, Utah, also known as beginning at the Northeast corner of Lot 8, Block 21, Plat "A" Logan City Survey, and running thence West 87.5 feet; thence North 5 rods to the place of beginning and further described as being situated in the Southeast Quarter of Section 33, Township 12 North, Range 1 East of the Salt Lake Base and Meridian; and

16

(n)    Real property located at 1408 West 2125 South, Wellsville, Utah, also known as Lot 108, Spring Creek Village, Phase 1, as shown by the Official Plat thereof, filed September 7, 2007, as Filing No. 954131 in the Office of the Recorder of Cache County, Utah. As said Plat Map may have heretofore been amended or supplemented and in the Declaration of Covenants, Conditions and Restrictions of Spring Creek Village, recorded in Cache County, Utah as Entry No. 1005619 in Book 1588 at Page 1751 of the Official Records of the County Recorder of Cache County, Utah (as said Declaration may have heretofore been supplemented).

A jury found the defendant guilty of Count One through Count Seven and Count Ten through Count Thirteen.

Based on the defendant's guilty verdict and the evidence and information submitted with the Government's Motion for Preliminary Order of Forfeiture, the Court finds the property (a) through (n) as listed below is subject to forfeiture to the government pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 as proceeds of the wire fraud offense:

(a)    $4,480,466.16 in funds seized from Bank of America account ending in 2653 on or about September 20, 2017, maintained in the name of Retail Ready Career Center;

(b)    $146,370.00 in funds seized from Bank of America account ending in 0252 on or about September 20, 2017, maintained in the name of Retail Ready Career Center;

(c)    $77,428.69 in funds seized from Charles Schwab account ending in 8588 on or about September 20, 2017, maintained in the name of Jonathan Davis;

(d)    $9,643.28 in funds seized from Bank of Utah account ending in 2251 on or about September 20, 2017, maintained in the name of Trades United;

(e)    One 2014 Lamborghini Aventador (VIN: ZHWUR1ZD0ELA02916), seized on October 6, 2017;

(f)    Up to $378,846.51 in equity from One 2016 Ferrari 488 (VIN: ZFF80AMA0G0219421), seized on October 6, 2017;

17

(g)     One 2017 Bentley Continental GT V8 (VIN: SCBFH7ZA0HC063118), seized on October 11, 2017;

(h)     Up to $154,046.28 in equity from One 2017 Mercedes-Benz AMG S63 (VIN: WDDUG7JB4HA325753, seized on October 11, 2017;

(i)     One 2016 Mercedes-Benz G63 (VIN: WDCYC7DF4GX258941), seized on October 11, 2017;

(j)     One 2016 Dodge Ram 2500 (VIN: 3C6UR5DL1GG314858), seized on October 11, 2017;

(k)     One 2016 BMW Alpina (VIN: WBA6D6C54GGK18160), seized on October 23, 2017;

(l)     Up to $2,266,833.25 in equity plus appreciation[42] from Real property located at 14888 Lake Forest Drive, Dallas, Texas, also known as lot 1, block A, of a replat of Lake Forest Addition, an addition to the city of Addison, Dallas County, Texas, according to the replat thereof recorded in volume 94205, page 1934, map records, Dallas County, Texas, as corrected by certificate of corrections recorded in volume 94226, page 300, deed records, Dallas County, Texas;

(m)     Up to $88,229.62 in equity plus appreciation in Real property located at 195 North 200 West, Logan, Utah, also known as beginning at the Northeast corner of Lot 8, Block 21, Plat "A" Logan City Survey, and running thence West 87.5 feet; thence North 5 rods to the place of beginning and further described as being situated in the Southeast Quarter of Section 33, Township 12 North, Range 1 East of the Salt Lake Base and Meridian; and

(n)     Up to $84,929.75 in equity plus appreciation in Real property located at 1408 West 2125 South, Wellsville, Utah, also known as Lot 108, Spring Creek Village, Phase 1, as shown by the Official Plat thereof, filed September 7, 2007, as Filing No. 954131 in the Office of the Recorder of Cache County, Utah.  As said Plat Map may have heretofore been amended or supplemented and in the Declaration of Covenants, Conditions and Restrictions of Spring Creek Village, recorded in Cache County, Utah as Entry No. 1005619 in Book 1588 at Page 1751 of the

---

[42] Case law provides that any appreciation in value of the property subject to forfeiture is also subject to forfeiture.  *See, e.g.*, *Betancourt*, 422 F.3d at 251; *United States v. Vogel*, No. 4:08-CR-224, 2010 WL 547344, at *4 (E.D. Tex. Feb. 10, 2010).

Official Records of the County Recorder of Cache County, Utah (as said Declaration may have heretofore been supplemented).

In addition, under 18 U.S.C. § 982(a)(1), the Court finds the properties in (e), (f), (g), and (l) are subject to forfeiture in their entirety, as "involved in" the money laundering offense.  It is therefore ordered that the property is forfeited to the Government, subject to the provisions of 21 U.S.C. § 853(n).  The Government established that the defendant had an interest in the property and that the Government demonstrated the requisite nexus between the property and the offenses.

In addition, now considering the addition of the Government's request for substitute assets to the property for preliminary order of forfeiture, the Court finds the following subject to forfeiture in this Preliminary Order of Forfeiture and **ORDERS** the following property to be subject to Preliminary Order of Forfeiture:

a) $8.90 in funds seized from Charles Schwab account ending in 8588 on or about September 20, 2017, maintained in the name of Jonathan Davis;

b) $25.00 in funds seized from Bank of Utah account ending in 2251 on or about September 20, 2017, maintained in the name of Trades United;

c) Up to $3,290.00 in equity from One 2016 Ferrari 488 (VIN: ZFF80AMA0G0219421), seized on October 6, 2017;

d) Up to $58,000.00 in equity from One 2017 Mercedes-Benz AMG S63 (VIN: WDDUG7JB4HA325753), seized on October 11, 2017;

e) Up to $0.47 in equity from One 2016 BMW Alpina (VIN: WBA6D6C54GGK18160), seized on October 23, 2017;

f) Up to $20,396.20 in equity plus appreciation from Real property located at 14888 Lake Forest Drive, Dallas, Texas, also known as lot 1, block A, of a replat of Lake Forest Addition, an addition to the city

19

of Addison, Dallas County, Texas, according to the replat thereof recorded in volume 94205, page 1934, map records, Dallas County, Texas, as corrected by certificate of corrections recorded in volume 94226, page 300, deed records, Dallas County, Texas.

This finding is also based on the information provided in the Government's motion and the supporting Clark Ross declaration, that the Government has shown under 21 U.S.C. § 853(p) that value of property subject to forfeiture from the defendant under 21 U.S.C. § 853(a) for his crimes cannot be located upon the exercise of due diligence as a result of the defendant's acts or omissions. Consequently, the Court further finds that all of the defendant's remaining equity and interest in the property that the government did not trace to the offense is subject to forfeiture as a substitute asset.

Therefore, in accordance with Federal Rule of Criminal Procedure 32.2(b)(1)(A) and 21 U.S.C. §§ 853(a) and (p), all right, title, and interest of the defendant in the property listed in (a) through (n) is hereby forfeited to the government.

Based on the above findings, and in accordance with Federal Rule of Criminal Procedure 32.2(b)(1)(A) and 21 U.S.C. § 853(a), the Court also imposes against the defendant a forfeiture **MONEY JUDGMENT** of $72,480,225.03. The Government will move to partially satisfy the money judgment to the extent of the net value it obtains from liquidating the assets and the funds obtained through forfeiture of specific assets or any other subsequently discovered traceable or substitute assets of sufficient equity.

It is further ordered that, pursuant to 21 U.S.C. § 853(g) and Federal Rule of Criminal Procedure 32.2, the United States Marshals Service (or its designee) shall

20

seize the property and hold it in its secure custody and control pending a final order of forfeiture.

To satisfy the money judgment in whole or in part, the United States may move at any time pursuant to Rule 32.2(e) to amend this order of forfeiture to forfeit substitute property having a value not to exceed $72,480,225.03 (less any previous deductions due to partial satisfactions of that amount).

The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary under Federal Rule of Criminal Procedure 32.2(e).

It is further ordered that, pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2, the Attorney General shall publish notice of the forfeiture order for at least 30 consecutive days on an official government Internet site (www.forfeiture.gov).  The notice shall state the Government's intent to dispose of the property and state that any person, other than the defendant, having or claiming a legal interest in the property must file a petition with the Court no later than 60 days after the first day of the publication and serve a copy on AUSA Dimitri N. Rocha, Asset Recovery Unit, United States Attorney's Office, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.  Pursuant to 21 U.S.C. § 853(n)(2), if direct written notice is provided to any person known to have alleged an interest in the property that is the subject of the order of forfeiture, that person must file a petition with the Court within 30 days of the final publication of notice or receipt of direct written notice, whichever is earlier, and serve a copy on AUSA Dimitri N. Rocha, Asset Recovery Unit, United States Attorney's Office, 1100 Commerce Street, Third Floor, Dallas,

Texas 75242.  The petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the property; shall be signed by the petitioner under penalty of perjury; and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, and any additional facts supporting the petitioner's claim and the relief sought.  The Government shall send, by means reasonably calculated to reach the person, written notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture.

Upon adjudication of all third-party interests, this Court will enter a final order of forfeiture addressing those interests.

## IV. Conclusion

For the forgoing reasons, the Court **GRANTS** the motion for preliminary order of forfeiture.

**IT IS SO ORDERED** this 1st of September 2021.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE