UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | No. 3:20-CR-0575-X |
| | § | |
| JONATHAN DEAN DAVIS | § | |

**MEMORANDUM OPINION AND**
**FORFEITURE MONEY JUDGMENT**

The United States filed a Motion for Preliminary Order of Forfeiture (Doc. 167). That order got appealed and vacated because the Court applied the wrong definition of "proceeds." (Doc. 387, 388). Briefing on remand ripened (Doc. 344), and the Court held a hearing. For the reasons below, the Court **GRANTS IN PART** the motion (Doc. 344).

### I. Legal Standards

Federal Rule of Criminal Procedure 32.2 authorizes the Court to make forfeiture determinations "[a]s soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought."[1] In this phase of the case, "the court must determine what property is subject to forfeiture under the applicable statute."[2] Forfeiture is mandatory when the defendant is convicted of an offense that implicates forfeiture.[3] "If the court finds that property is subject to forfeiture, it must

---

[1] FED. R. CRIM. P. 32.2(b)(1)(A).

[2] *Id.*

[3] *See* 21 U.S.C § 853 ("any person convicted of a violation . . . shall forfeit to the United States").

1

promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria."[4]  The burden of proof for determining forfeiture is by a preponderance of the evidence.[5]

"If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure."[6]  "If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case."[7]  18 U.S.C § 981(a)(1)(C) authorizes forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" the wire fraud statute.[8]  And 18 U.S.C. § 982(a)(1) authorizes forfeiture of "any property, real or personal, involved in [money laundering], or any property traceable to such property."[9]

---

[4] *Id.* at 32.2(b)(2)(A).

[5] *United States v. Gasanova*, 332 F.3d 297, 301 (5th Cir. 2003).

[6] 28 U.S.C. § 2461(c).

[7] *Id.*

[8] *See* 18 U.S.C § 981(a)(1)(C).  Section 981(a)(1)(C) applies to a host of offenses, including any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7). *Id.*  Wire fraud is included under the umbrella of "specified unlawful activity."  *See id.* §§ 1956(c)(7)(A) (covering "any act or activity constituting an offense listed in section 1961(1) of this title . . . ."); § 1961(1) (covering "section 1343 (relating to wire fraud)").

[9] *See* 18 U.S.C. § 982(a)(1) (applying to person convicted of an offense in violation of 18 U.S.C. § 1957, the money laundering statute.).

2

## II. Analysis

### A. Top Line Number for Proceeds

Proceeds are property the defendant would not have obtained or retained but for his commission of a criminal offense.[10] The government must demonstrate a nexus between the offense and the property but is not required to explain how each individual dollar was fraudulently obtained.[11] Further, forfeitable proceeds include proceeds from a continuing fraudulent scheme.[12]

The government contends that the proceeds of the seven counts of wire fraud in this case are each VA payment made to Retail Ready Career Center for veteran student tuition, a total of $72,480,225.03. Davis argues the total amount of VA payments is the wrong calculus of wire fraud proceeds. Because the seven "use of interstate wires" identified in the superseding indictment were individual money transfers from the VA to Retail Ready, Davis argues that the proceeds of each count of wire fraud is limited to the amount of the money transfer identified with that offense.

But this is incorrect. Although the *actus rea* of wire fraud is the use of interstate wires, by definition, wire fraud is the use of interstate wire communications for the purpose of executing a scheme or artifice to defraud.[13]

---

[10] *United States v. Sanders*, 952 F.3d 263, 286 (5th Cir. 2020).

[11] *See id.*

[12] *United States v. Reed*, 908 F.3d 102, 125–26 (5th Cir. 2018).

[13] 18 U.S.C. § 1343.

Because the object of wire fraud is to further a fraudulent scheme, the proceeds of wire fraud necessarily include the proceeds of the scheme itself.

Here, the superseding indictment identified "a scheme to defraud the VA and Retail Ready students, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises," resulting in the VA paying "over $71 million in GI Bill benefits to Retail Ready."[14] After a two-week trial, the jury found Davis guilty of all seven wire fraud counts.[15] As Davis was keen to argue at trial, the jury could only find Davis guilty of conduct alleged in the superseding indictment; lest they work an unconstitutional constructive amendment of the indictment. Because the scheme involving "over $71 million in GI Benefits" was the only scheme alleged in the superseding indictment, by finding Davis guilty of wire fraud, the jury also necessarily concluded that Davis devised this scheme as well.[16] And, based on the evidence and information in the record, the Court independently determines that the sum-total VA payments are the proceeds of Davis's scheme to defraud. Therefore, as a general matter, the proceeds of wire fraud may include all payments made by the VA to Retail Ready as a result of the scheme.

But the Court cannot fully agree with the government that this top line number for the forfeiture money judgment is $72,480,225.03. Yes, this is the amount the VA sent Retail Ready for tuition for veterans. But the PSR calculated that refunds drove the ultimate amount the VA paid Retail Ready down to $65,200,000.

---

[14] Doc. No. 107 at 2–4.

[15] Doc. No. 164 at 1.

[16] *See* 18 U.S.C. § 1343.

This is the number the Fifth Circuit used for restitution, and the Court will use it for a forfeiture money judgment as well.

### B. Deducting Direct Costs

Next is the issue of deducting direct costs from that top line number. A claimant (here, Davis) has the burden of proving direct cost deductions.[17] At the last hearing, Roy Cook (the former chief financial officer of Retail Ready Career Center) testified that the direct costs for the operation were $45,981,899.48.[18] This figure deducted from expenses of $53,862,668.79 overhead in the amount of $7,880,769.31. Based on the proper top line number of $65,200,000 the VA paid to Retail Ready for veteran tuition (that wasn't refunded), deducting direct costs yields a figure for the money judgment of $19,218,100.52.[19]

Davis's also makes arguments on tracing, the Eighth Amendment, and that he didn't receive or control the funds at issue. On tracing, the Court previously rejected Davis's tracing argument and does so again here. The government's lowest intermediate balance tracing suffices.

On Davis's Eighth Amendment argument, the Court maintains its position that forfeiting the fraudulent income minus direct costs is not an Eighth Amendment violation. Davis strongest Eighth Amendment argument would be if the Court did

---

[17] 18 U.S.C. § 981(a)(2)(B).

[18] Doc. 364 at 22, 49; Hearing DX 4. The government did not offer contrary evidence.

[19] To put the analysis in layman's terms, courts should award money judgments for all of the fraudulent income if the business was illegal. If the business was a legal business run in an illegal way, the courts should award money judgments for the fraudulent income minus the legitimate, direct costs of running the business. So the deduction of direct costs helps the claimant. These direct costs that get deducted do not include overhead expenses.

not deduct from the top line figure the amounts Retail Ready refunded to the VA. The government argues the statute still contemplates a forfeiture money judgment for that conduct but that "there might be some Eighth Amendment arguments[.]"[20] There would be, which is why the Court is forfeiting the fraudulent funds Davis got from the VA and didn't refund, minus direct costs.

On control, Davis argues he cannot be criminally liable for this amount because he never personally received the GI Bill benefit funds from the VA.[21] But this ignores the fact that Davis had full control over Retail Ready.[22] These GI Bill funds paid to Retail Ready, and controlled by Davis, as a result of his fraudulent acts are subject to forfeiture by money judgment under the relevant statutes.

The government took issue with several of Cook's classification of costs as overhead expenses on cross examination. But the government ultimately stated in closing that a $27 million judgment (using $45 million in direct costs to deduct from roughly $72 million top line figure) would be acceptable.[23] The government's primary

---

[20] Doc. 306 at 75.

[21] Davis bases his argument on *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), where the Supreme Court of the United States clarified that the forfeiture provisions 21 U.S.C. § 853 do not impose joint and several liability on each member of a conspiracy. But this case does not involve section 853 or a conspiracy, and so *Honeycutt* does not apply.

[22] *See id.*; *see also United States v. Peters*, 732 F.3d 93, 102 (2d Cir. 2013) (because the statute makes the defendant liable for property obtained "directly or indirectly," he is liable for proceeds obtained by a corporation that he dominates or controls, even if he did not obtain the money himself); *SEC v. Amerindo Inv. Advisors, Inc.*, No. 1:05-CV-05231, 2019 WL 3526590 (S.D.N.Y. Aug. 2, 2019) (consistent with *Honeycutt*, defendants are liable for forfeiture money judgment including value of corporate assets they deposited into business they owned or controlled); *United States v. Emor,* 850 F. Supp. 2d 176, 217 (D.D.C. 2012) (proceeds become proceeds when they come under the defendant's control, even if he has not yet received the benefit).

[23] Doc. 306 at 79 ("[I]f we take Mr. Cook's number today for 45 million for direct costs and come down to the 27 million—which equals 27 million for the net proceeds, then that's a floor, ceiling that the government is not going to have a problem with that. We can move forward with that.").

disagreement appears to be with the Court deducting refunded money to the VA from the topline figure. But as explained above, the Court cannot in good conscience order Davis to forfeit money he has already returned.

### C. Money Judgement

Pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(A) and 21 U.S.C. § 853(a), the Court imposes against Jonathan Dean Davis a personal money judgment of $19,218,100.52.

To satisfy the money judgment in whole or in part, the United States may move at any time under Rule 32.2(e) to amend this order to include the forfeiture of substitute property having a value not to exceed $19,218,100.52.

An amended judgment will be issued with this forfeiture money judgment amount of $19,218,100.52.

The amended judgment will include the following payment address information: Payments toward the forfeiture money judgment shall be made to the United States Marshals Service, 1100 Commerce Street, Room 1657, Dallas, Texas 75242, 214-767-0836.

The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary under Fed. R. Crim. P. 32.2(e).

### IV. Conclusion

For the forgoing reasons, the Court **GRANTS IN PART** the motion for a forfeiture money judgment.

IT IS SO ORDERED this 21st day of August, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE